UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRADLEY LANDWEHR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:16-CV-00486 JAR |
| | ) |
| CITY OF GERALD, MO., et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' motion for summary judgment (Doc. No. 24). The motion is fully briefed and ready for disposition. Plaintiff Bradley Landwehr ("Landwehr") brings this action pursuant to 42 U.S.C. § 1983, claiming he was terminated from his employment in violation of his First Amendment rights to free speech and political association. Landwehr also asserts claims for retaliation under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), and the Missouri Human Rights Act, R.S. Mo. § 213.010 et seq. ("MHRA), and conspiracy to terminate him in violation of his rights under state and federal law. Defendants are the City of Gerald, Missouri (the "City"), former City Mayor Keith Wehmeyer ("Wehmeyer"), who is sued only in his individual capacity, and Hillary Ward ("Ward") and Stephen Grgurich ("Grgurich"), members of the City's Board of Aldermen, who are sued in their individual and official capacities.[1] For the following reasons, the motion

---

[1] A suit against a municipal officer in his or her official capacity is functionally equivalent to a suit against the municipality. Kentucky v. Graham, 473 U.S. 159, 166 (1985); Brandon v. Holt, 469 U.S. 464, 471-72 (1985). Therefore, it would be redundant to allow the suit to proceed against the City and the individual Aldermen in their official capacities. Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir.1999); see also Artis v. Francis Howell N. Band Booster Ass'n Inc., 161 F.3d 1178, 1182, 1185 (8th Cir. 1998). Accordingly, the Court dismisses Landwehr's official capacity claims against Ward and Grugrich.

will be granted in part and denied in part.

## I. Background[2]

Wehmeyer served as Mayor of the City from April 2015 to October 2015.[3] (SOF ¶ 135) Prior to his election on April 4, 2015, Wehmeyer was a member of the City's Board of Aldermen. Ward and Grgurich were at all relevant times and are currently members of the City's Board of Aldermen.

Landwehr was hired by the City as the part-time Director of Public Works in December 2009, following the demotion of Nicholas Grube ("Grube"). (SOF ¶¶ 146, 147.)[4] In April 2010, Mayor Schulte reappointed Landwehr as the part-time Director of Public Works; Landwehr's reappointment was unanimously approved by the City's Board of Aldermen. (SOF ¶¶ 143, 149.) In May 2010, Landwehr was hired as the full-time salaried Director of Public Works. (SOF ¶ 150.) In July 2012, "after much discussion about his performance" and budgetary issues, the Board of Aldermen voted to relieve Landwehr of his duties and re-appoint Grube as Public Works Director.[5] (SOF ¶ 152.) In August 2012, then-Mayor Joanne Parmentier officially reappointed Grube as Public Works Director. (SOF ¶ 153.) In April 2013, newly (re)elected Mayor Schulte reappointed Landwehr as Director of Public Works. Landwehr served in the position until he was terminated on February 24, 2015. (SOF at ¶¶ 1, 154.)

On February 24, 2015, the Board, comprised of Aldermen Weatherford, Wehmeyer,

---

[2] The facts are taken from Defendants' Statement of Uncontroverted Facts ("SOF"), Doc. No. 25 at 3-29, and Plaintiff's Statement of Controverted Material Facts ("PSOF"), Doc. No. 32.

[3] Wehmeyer resigned as Mayor on October 8, 2015 following the filing of a complaint against him with the Missouri Ethics Commission.

[4] Grube had been hired as the Public Works Director in July 2007 and reappointed to the position by then-Mayor Otis Schulte in April 2009. (SOF ¶¶ 142, 144.)

[5] It is undisputed that over the last ten years, the position of Public Works Director had been traded back and forth between Landwehr and Grube. (SOF ¶¶ 4, 142, 146, 147, 150, 152, 153, 154.)

Ward and Justus, voted unanimously to terminate Landwehr because his "services were no longer needed." (Doc. No. 25-7 at 1-2; SOF ¶¶ 1, 9.) Although the Board minutes do not reflect the Board's reasons for terminating Landwehr (POSF ¶¶ 193, 201), Defendants later testified that Landwehr was terminated for his overspending, lack of reliable quotes for the Board, performing unnecessary tasks, mismanagement of the construction, repair and maintenance of the Walnut Lift Station, failure to follow the City's purchasing policy, buying dirt without bids or Board approval, failure to remedy DNR violations relating to the Lagoon, failure to finish the Pretreatment Ordinance, failure to enforce the Disconnect Policy on water and sewer, failure to perform routine maintenance on equipment resulting in excessive repair bills, and being out of town or on personal business during work hours (SOF ¶¶ 15-31, 37-47, 50, 54; PSOF ¶ 191). The Board never discussed with Landwehr any issues or concerns it had with his job performance or afforded him an opportunity to address those concerns[6] (PSOF ¶¶ 190, 207, 244), although Landwehr testified he was aware of the Board's dissatisfaction with the cost of repairs to the Lift Station and his decision in the summer of 2014 to purchase dirt to fill in a ditch in front of City Hall (SOF ¶¶ 32, 33, 34). Following his termination on February 24, Landwehr requested a hearing, "as this is not the first time he [had] been fired by the Board." (Doc. No. 25-7 at 2.)

A reinstatement hearing was held in open session before the Board of Aldermen on

---

[6] According to the City's Employee Handbook, it is the duty of every Department Head, Board of Aldermen, or Mayor to discuss improper or inadequate performance with employees in order to correct any faults in performance and avoid the need to exercise disciplinary action. (Doc. No. 32-2 at 24) In the event disciplinary action is taken, the Employee Handbook states that "[a] written notice shall be given to each employee stating the reasons for the disciplinary action and the date it is to take effect. The notice is to be given to the employee at the time such action is taken and in any event no later than three working days from the date of action. A copy of the notice, signed by the employee, will be placed in the employee's file and shall serve as prima facie evidence of delivery." (Id. at 25) The Handbook further provides that an employee may be suspended, reduced in pay or class, or removed at any time by a majority vote by the Board of Aldermen. (Id.)

February 27, 2015. (Doc. No. 25-7 at 2-4; SOF ¶¶ 2, 70.) Then-Alderman Wehmeyer recused himself. (SOF ¶ 69.) Landwehr appeared at the hearing with counsel and threatened to bring an age and/or disability discrimination lawsuit against the City if he was not reinstated.[7] (SOF ¶ 71; PSOF ¶ 249.) Alderman Weatherford resigned during the hearing. Grgurich was not present. (SOF ¶ 82.) The remaining two Aldermen, Ward and Justus, testified that faced with the threat of a lawsuit, they felt it was in the City's best interest to reinstate Landwehr. (PSOF ¶¶ 251-53.) Both voted to reinstate Landwehr. (SOF ¶ 2.) Following Landwehr's reinstatement on February 27, 2015 through April 14, 2015, the Board was unaware of any additional issues or problems with Landwehr's job performance. (PSOF ¶¶ 227, 228, 229.)

In April 2015, Landwehr's brother, Jeff Landwehr, ran against Wehmeyer in the mayoral election. Although Wehmeyer, Ward and Grgurich never saw Landwehr do anything to support his brother's candidacy, they all "assumed" he was supporting his brother. (SOF ¶¶ 87, 89, 156.)

On April 4, 2015, an anonymous attack letter ("Five Reasons Not to Vote for Me" letter) listing five reasons why residents should not vote for Wehmeyer was delivered to several City residents.[8] (Doc. No. 32-12.)

After registering to run for Mayor in April 2015, Wehmeyer contacted Grube about the Public Works Director position, because he planned to replace Landwehr if he was elected. (SOF ¶ 84.)

On April 7, 2015, Election Day, Rick Duncan, a candidate for the City Board of

---

[7] The Special Council Minutes from February 27, 2015 specifically state: "Attorney Petruska commented if there is no reason [for Landwehr's termination] given, then the City is in violation with state and federal laws. If because of age or disabilities, there will be a full lawsuit." (Doc. No. 25-7 at 3.)

[8] The letter listed the following reasons: "I cant [sic] regularly attend meetings"; "I cant [sic] tell the truth when questioned by arson investigators"; I worked on other peoples [sic] equipment while I was on the clock for the city of Gerald"; "I tried to get police officers to lie in order to get the chief of police fired"; "I refuse to keep my property in a clean manner."

Aldermen, was present at the City polling station and overheard Wehmeyer, Ward, and Grugrich talking about what they would do if elected. Grugrich was running for the Board of Alderman. Wehmeyer and Grugrich were running as a team and encouraging people to vote for both of them because they "knew where they wanted to take the City." (PSOF ¶ 163.) According to Duncan, Wehmeyer told Ward and Grugrich: "I can tell you one thing, Landwehr is campaigning for his brother and that will be a good reason to get rid of him." Duncan also overheard Wehmeyer tell Ward and Grugrich that Landwehr was behind the "Five Reasons Not to Vote for Me" letter, and that when he won the election, "that will be reason enough to fire his ass." (PSOF ¶¶ 157, 159, 165, 166-168, 171.) Wehymeyer denies making these statements, and Ward and Grugrich deny having any conversations with Wehymeyr about it. Landwehr disputes the truthfulness of Defendants' testimony.

Defendant Wehmeyer defeated Landwehr's brother in the mayoral race and on April 14, 2015, was sworn in as the new City Mayor. (SOF ¶ 3.) Wehmeyer then appointed Grube as Public Works Director to replace Landwehr. (SOF ¶ 4.) Ward moved to accept the appointment; Grugrich seconded the motion. Ward and Grgurich voted "aye;" Aldermen Justus and Lowe voted "nay." Wehmeyer broke the tie with an "aye" vote and the motion carried. (Doc. No. 25-7 at 21.) Landwehr was the only appointed officer Wehmeyer replaced when elected. (PSOF ¶¶ 184, 185.) Ward and Grugrich both contend they did not know Wehmeyer was going to nominate Grube as Public Works Director. (PSOF ¶ 236.)

On or about May 27, 2015, Landwehr filed a charge of discrimination with the Missouri Human Rights Commission and the Equal Employment Opportunities Commission (EEOC). On January 13, 2016, he was issued a right-to-sue letter by the Missouri Human Rights Commission; on May 13, 2016, he was issued a right-to-sue letter by the EEOC. On August 9, 2016, Landwehr

filed his First Amended Complaint alleging violation of his First Amendment rights to free speech and political association in violation of 42 U.S.C. § 1983 (Count I); age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 261 *et seq.* and the Missouri Human Rights Act, R.S. Mo. § 213.010 *et seq.* (Count II)[9]; retaliation (Count III); conspiracy to violate civil rights (Count IV); and conspiracy to violate civil rights under state law (Count V). (First Amended Complaint ("FAC"), Doc. No. 12). Landwehr claims he was terminated because of his support of his brother's candidacy for Mayor against Defendant Wehmeyer and/or his political association with his brother, and because his counsel threatened litigation at his reinstatement hearing.

## II.     Legal Standard

"Summary judgment is proper where the evidence, when viewed in a light most favorable to the non-moving party, indicates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(c). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id. "The basic inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Diesel Machinery, Inc. v. B.R. Lee Industries, Inc., 418 F.3d 820, 832 (8th Cir. 2005) (internal quotation marks and citation omitted). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. City of Mt.

---

[9] On June 13, 2017, Landwehr voluntarily dismissed his age discrimination claim (Count II) as well as age discrimination as a basis for his conspiracy claims alleged in Counts IV and V. (Doc. No. 21.)

Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). If the movant does so, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

In determining whether summary judgment is appropriate in a particular case, the Court reviews the facts in a light most favorable to the party opposing the motion and gives that party the benefit of any inferences that logically can be drawn from those facts. The Court is required to resolve all conflicts of evidence in favor of the nonmoving party. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 619 (8th Cir. 1988). In considering a motion for summary judgment, the Court may not make credibility determinations, weigh the evidence, or draw inferences from the facts. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011).

### III. Discussion

#### A. First Amendment claims (Count I)

In Count I, Landwehr claims he was terminated from his position as Director of Public Works in retaliation for his support of, or association with, his brother's mayoral campaign in violation of his First Amendment rights. The First Amendment restrains a government employer from retaliating against a public employee based on the employee's speech or associations. See Thompson v. Shock, 852 F.3d 786, 791 (8th Cir. 2017) (free association claim); Morris v. City of Chillicothe, 512 F.3d 1013, 1018 (8th Cir. 2008) (free association claim); Wingate v. Gage County Sch. Dist., No. 34, 528 F.3d 1074, 1080–81 (8th Cir. 2008) (free speech claim).

To establish a prima facie case of First Amendment retaliation, a plaintiff must allege and show that: "(1) [he] engaged in activity protected by the First Amendment; (2) the defendant took an adverse employment action against [him]; and (3) the protected conduct was a substantial or motivating factor in the defendant's decision to take the adverse employment

action." Wilson v. Miller, 821 F.3d 963, 967–68 (8th Cir. 2016) (quoting Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654–655 (8th Cir. 2007) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). Here, the parties do not dispute, and the Court finds, that Landwehr's support of his brother's candidacy is a First Amendment protected activity and that the decision not to re-appoint him to the position of Public Works Director constituted an adverse employment action. They disagree, however, as to whether Landwehr can show a "causal connection" between his protected activity and his termination following the April 2015 election. "Whether the protected activity was a substantial or motivating factor in an employment decision is a question of fact, but the sufficiency of the evidence to create an issue of fact for the jury is solely a question of law." Morris, 512 F.3d at 1018 (citing Cox v. Miller County R-I School Dist., 951 F.2d 927, 931 (8th Cir. 1991)).

To avoid summary judgment on his claim, Landwehr must either present "direct evidence" of retaliation or follow the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Williams v. Tucker, 857 F.3d 765, 768–69 (8th Cir. 2017) (quoting Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P., 444 F.3d 961, 964–65 (8th Cir. 2006)). See also Bashara v. Black Hills Corp., 26 F.3d 820, 823 (8th Cir. 1994) (citation omitted) ("[W]hen direct evidence of discrimination exists, the plaintiff need not establish a prima facie case because creating an inference of discrimination is unnecessary."); Guimaraes v. SuperValu, Inc., 674 F.3d 962, 972–73 (8th Cir. 2012) (citing Togerson, 643 F.3d at 1045). Direct evidence in this context must be strong enough to show "a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employment decision." Schierhoff, 444 F.3d at 965 (citation omitted); see also Griffith v. City of Des Moines, 387 F.3d

733, 736 (8th Cir. 2004). Direct evidence includes "evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude," where it is sufficient to support an inference that discriminatory attitude more likely than not was a motivating factor. Schierhoff, 444 F.3d at 966 (quoting Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 449 (8th Cir. 1993) (internal quotations omitted)).

Here, Landwehr has produced an affidavit from Rick Duncan, who was present at the City's single polling station on Election Day. According to Duncan, he overheard Wehmeyer say to both Grgurich and Ward, "I can tell you one thing, [Landwehr] is campaigning for his brother and that will be a good reason to get rid of him." Duncan also overheard Wehmeyer tell Grgurich and Ward that "[Landwehr] was behind an unfavorable letter written about him, and when Wehmeyer won the election 'that will be reason enough to fire his ass.'" (Affidavit of Rick Duncan, Doc. No. 32-10 at ¶¶ 11, 12.)

Landwehr argues this is sufficient direct evidence that his protected activity was a motivating factor in Wehmeyer's decision not to re-appoint Landwehr, a decision upheld by the Board. See Schierhoff, 444 F.3d at 966. Wehmeyer denies making these statements, and Ward and Grgurich both deny having any conversation with Wehmeyer regarding Landwehr. The Court cannot, however, weigh evidence or make credibility determinations at the summary judgment stage. Torgerson, 643 F.3d at 1042 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)). Duncan's attestations regarding the statements he overheard at the polling stations are sufficient to create a material factual dispute in the face of contrary attestations by Defendants.

Viewing the evidence in the light most favorable to Landwehr, the Court finds there are genuine issues of material fact as to whether his protected activity was a substantial or

motivating factor in the termination of his employment, precluding summary judgment for Defendants on his First Amendment retaliation claim.

### B. Qualified immunity

The individual Defendants assert entitlement to qualified immunity because Landwehr's claims fail on the merits. Additionally, the individual Defendants urge they are entitled to qualified immunity because they based their termination/non-appointment of Landwehr on their policy of making appointments following the election.

An official is entitled to summary judgment based on qualified immunity unless (1) the evidence, viewed in the light most favorable to the nonmoving party, establishes a violation of a federal constitutional or statutory right, and (2) the right was clearly established at the time of the violation. Capps v. Olson, 780 F.3d 879, 884 (8th Cir. 2015) (citing Pearson v. Callahan, 555 U.S. 223, 232 (2009)). Because qualified immunity is an immunity from suit rather than a mere defense to liability, its availability should ordinarily be decided by the Court before trial. Hudson v. Norris, 227 F.3d 1047, 1050 (8th Cir. 2000) (internal quotation marks and citations omitted). However, the nonmoving party is still given the benefit of all relevant inferences at the summary judgment stage, and if a "genuine dispute exists concerning predicate facts material to the qualified immunity issue, the defendant is not entitled to summary judgment on that ground." Id. (internal quotation marks and citations omitted).

As discussed above, the record before the Court demonstrates the existence of genuine issues of material fact regarding whether the decision not to re-appoint Landwehr was based on his protected activity. Thus, genuine issues of fact exist to preclude a finding that the individual Defendants are entitled to qualified immunity. Defendants' motion for summary judgment will

therefore be denied to the extent it is based on the individual Board Members' qualified immunity. See Strinni, 681 F. Supp. 2d at 1082-83.

### C. Retaliation (Count III)

In Count III, Landwehr alleges he was terminated from his position as Director of Public Works in retaliation for complaining about illegal discrimination to the Board of Aldermen on February 27, 2017 in violation of the ADEA and MHRA. The ADEA and MHRA's anti-retaliation provision make it unlawful for an employer to discriminate against an employee who has opposed an unlawful employment practice or who has filed charges with the EEOC. 29 U.S.C.A. § 623(d). To establish a prima facie claim of retaliation, a plaintiff must show: (1) he engaged in statutorily protected activity; (2) an adverse employment action occurred; and (3) a causal connection between the protected activity and the adverse action. See Betz v. Chertoff, 578 F.3d 929, 937 (8th Cir. 2009); Cooper v. Albacore Holdings, Inc., 204 S.W.3d 238, 245 (Mo. Ct. App. 2006). Retaliation claims under the ADEA and the MHRA in which there is no direct evidence of discrimination are analyzed according to the McDonnell Douglas framework. Richey v. City of Independence, 540 F.3d 779, 783-84 (8th Cir. 2008); Stewart v. Independent School Dist. No. 196, 481 F.3d 1034, 1042-43 (8th Cir. 2007).

Landwehr claims he engaged in protected activity when he opposed his termination as illegal age and disability discrimination at the February 27, 2015 reinstatement hearing and threatened to file a lawsuit if he was not reinstated. He also claims that despite being reinstated, he was subjected to an adverse employment action when he was terminated on April 14, 2015, less than two months later. Defendants contend, admittedly without authority, that a "one-time oral threat of litigation in an attempt to be reinstated" is not protected activity, particularly where the alleged "discriminatory practices" have no basis in law or fact. However, protected activity is

not limited to the filing of a formal charge with the EEOC, and includes "oppos[ing] any practice made unlawful" by the ADEA. Kempcke v. Monsanto Co., 132 F.3d 442, 445 (8th Cir. 1998). Moreover, the employer conduct that an employee opposes need not in fact be unlawful; rather, the employee must "demonstrate a good faith, reasonable belief that the underlying challenged action violated the law." Id. (quoting Wentz v. Maryland Casualty Co., 869 F.2d 1153, 1155 (8th Cir. 1989)). Viewing the evidence in the light most favorable to Landwehr, the Court finds and concludes that his complaints constituted protected activity.

The more difficult issue in the Court's view is the fact that two months elapsed between Landwehr's protected activity and his termination on April 14, 2015. The Eighth Circuit has held that such a gap in time "weakens the inference of retaliation that arises when a retaliatory act occurs shortly after a complaint." Hesse v. Avis Rent A Car Sys., Inc., 394 F.3d 624, 633 (8th Cir. 2005). Here, the doubt created by this time gap is reinforced by the fact that Landwehr was actually reinstated following his complaint of discrimination. Further, Landwehr has failed to set forth any affirmative evidence that his termination was causally connected to his complaints of age discrimination.

Even assuming Landwehr established a prima facie of retaliation in connection with his ADEA/MHRA protected activity, Defendants have articulated a nondiscriminatory, legitimate reason for his termination, namely their dissatisfaction with his job performance. Under the McDonnell Douglas framework, the burden then shifts to Landwehr to demonstrate that this reason was a pretext for retaliation. One method of proving pretext is to show the employer's proffered explanation has no basis in fact. See Logan v. Liberty Healthcare Corp., 416 F.3d 877, 881 (8th Cir. 2005). This Landwehr cannot do, as he has himself acknowledged his awareness of, among other things, the Board's dissatisfaction with his management of the Lift Station and

purchase of dirt without bids or Board approval. Landwehr argues he can prove pretext because Defendants' proffered reasons for his termination are not reflected in the Board minutes. This does not, however, create a genuine issue of material fact as to pretext. Once the movant has supported his or her motion, the nonmovant must affirmatively show that a material issue of fact remains in dispute and may not simply rest on the hope of discrediting the movant's evidence at trial. Clark v. Principi, 200 F. Supp. 2d 1109, 1125–26 (E.D. Mo. 2002). Here, Landwehr has failed to put forth any evidence raising a reasonable inference that the reasons given were pretextual. For these reasons, the Court will grant summary judgment in favor of Defendants on Landwehr's claim for retaliation.

### D. Conspiracy (Counts IV and V)

In Counts IV and V, Landwehr claims Defendants, acting under color of state law, conspired together and reached a mutual understanding to terminate him in violation of his rights under state and federal law. To advance past the summary judgment stage, Landwehr must "allege with particularity and specifically demonstrate with material facts that the [D]efendants reached an agreement. [Landwehr] can satisfy this burden by 'pointing to at least some facts which would suggest [Defendants] "reached an understanding" to violate [his] rights.'" Bonenberger v. St. Louis Metro. Police Dep't, 810 F.3d 1103, 1109 (8th Cir. 2016) (quoting City of Omaha Emps. Betterment Ass'n v. City of Omaha, 883 F.2d 650, 652 (8th Cir. 1989)).

Landwehr acknowledges he has no direct evidence that Defendants had any agreement to fire him or replace him because of his threats of litigation in February 2015, or because of his support of his brother's candidacy. (SOF ¶¶ 126-29.) The factual basis for his conspiracy allegations center on the Election Day statements made by Wehmeyer to Ward and Grugrich. Even if true, however, Wehmeyer's statements only establish that he told Ward and Grugrich

that Landwehr's support for his brother and involvement with the "Five Reasons Not to Vote For Me" letter would be a good reason to get rid of him, not that the three agreed. These are statements of Wehmeyer's intent only.

Landwehr also points to Ward's statement to Wehmeyer that she "had his back" on any appointment he made as signifying her support of the plan to fire him, and that Grgurich spoke with a number of individuals seeking their opinions on whether Grube would be an appropriate replacement for Landwehr, showing that he knew about the plan to fire Landwehr and ultimately went along with it. Even when viewed in the light most favorable to Landwehr, the Court concludes this evidence is insufficient for a reasonable jury to infer a "meeting of the minds" or understanding among Defendants to terminate Landwehr in violation of his rights. See Marti v. City of Maplewood, Mo., 57 F.3d 680, 685 (8th Cir. 1995). Further, under R.S. Mo. § 79.240, the Mayor and Board of Aldermen have the authority to remove appointed officers of the City and/or fire City employees.[10] The fact that Ward and Grgurich voted to appoint Grube to the position of Public Works Director does not constitute an unlawful conspiracy. The Court will, therefore, grant summary judgment in favor of Defendants on Landwehr's conspiracy claims.

**IV.    Conclusion**

The Court having granted in part and denied in part Defendants' motion for summary

---

[10] The relevant subsection of § 79.240 provides, in its entirety:

The mayor may, with the consent of a majority of all the members elected to the board of aldermen, remove from office, for cause shown, any elective officer of the city, such officer being first given opportunity, together with his witnesses, to be heard before the board of aldermen sitting as a board of impeachment. Any elective officer, including the mayor, may in like manner, for cause shown, be removed from office by a two-thirds vote of all members elected to the board of aldermen, independently of the mayor's approval or recommendation. The mayor may, with the consent of a majority of all the members elected to the board of aldermen, remove from office any appointive officer of the city at will, and any such appointive officer may be so removed by a two-thirds vote of all the members elected to the board of aldermen, independently of the mayor's approval or recommendation. The board of aldermen may pass ordinances regulating the manner of impeachments and removals. R.S. Mo. § 79.240. Section 115.040 of the City's Code of Ordinances provides the same.

judgment, the claims remaining for trial are Plaintiff's First Amendment claims against the City and Wehmeyer, Ward and Grugrich in their individual capacities (Count I).

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [24] is **GRANTED** in part. Judgment is entered in favor of Defendants and against Plaintiff on Counts III, IV and V of Plaintiff's First Amended Complaint.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment [24] is **DENIED** as to Count I of Plaintiff's First Amended Complaint.

**This case remains set for trial on on January 16, 2018** on Plaintiff's First Amendment claims against the City and Wehmeyer, Ward and Grugrich in their individual capacities (Count I).

A separate Partial Judgment shall be entered in accordance with this Memorandum and Order.

Dated this 18th day of December, 2017.

*John A. Ross*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**